IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Mae Keong Beon,<br><br>        Plaintiff,<br><br>-versus-<br><br>Medical University of South Carolina,<br><br>        Defendant. | C. A. No. 2:09-0004-CWH-RSC<br><br>**REPORT AND RECOMMENDATION** |

This employment discrimination case alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., and a state law claim of breach of contract is before the undersigned magistrate judge for a report and recommendation on the defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on all causes of action filed on February 16, 2010. 28 U.S.C. § 636(b).

This action was removed from state court on January 2, 2009. Discovery is closed. After Defendant Medical University of South Carolina (MUSC) filed its motion for summary judgment, Plaintiff Mae Keong Boen opposed the motion on March 15, 2010. MUSC filed a reply on March 31, 2010. Oral argument was had before the undersigned on April 7, 2010. Hence it appears consideration of the motion is appropriate.

Beon set forth the following causes of action in her complaint and has subsequently abandoned most claims. The

1

original claims and the remaining questions are set forth below:

Count 1- "Sex Discrimination" in terminating her, and transferring her to another department. At oral argument the only issue remaining is whether a March 2007 letter and oral notice from Dr. Silver triggered the running of the 300 days statute of limitations-if so, the claim that she was terminated because of her sex is untimely.

Count 2-"Hostile Work Environment" in that she and two other Asians were subjected to a hostile work environment during her entire time at MUSC because of her Asian race; in ¶99-98 the plaintiff asserted the hostile work environment was "based on her sex and race". At oral argument, the entire count was conceded.

Count 3-"Retaliation" in not allowing her to properly grieve following her termination, and in transferring her grant money to another researcher because she reported her termination based on sex and race to the institutional EEO, the Office of Gender Equality (OGE). Following oral argument, the only claim remaining is that she was not granted a formal hearing following the nonrenewal of her contract because she complained to the OGE.

Count 4- "Equal Pay Act" in that she was paid lower wages than a male counterpart and that she was denied promotions to positions in which she would have earned greater pay than a male counterpart. Plaintiff conceded this count.

Count 5-"Sexual and Racial Discrimination-Denial of Promotion." Plaintiff conceded this count.

Count 6-"Breach of Contract" in that she was terminated despite having obtained extramural funding, in violation of her contract's promise of continued employment as long as she obtained extramural funding. At oral argument the claim was narrowed to whether a May 2006 letter created a contract to enter into a contract for the 2007 to 2008 year, and if so, was the contract breached?

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

Speculation is not enough to withstand a motion for summary judgment. Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-

12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 242 (4th Cir. 1982). Such bald, unsupported, and conclusory allegations do not constitute evidence and therefore do not create triable issues of fact. <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). A plaintiff's beliefs, just like conclusory allegations, speculation, and conjecture are simply insufficient to defeat a properly supported motion for summary judgment. <u>See</u>, <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355,364 (4th Cir. 1995).

In summary, the plaintiff must present admissible evidence which raises a material and genuine factual dispute. "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.

**FACTS**

Beon is a Korean female who got her Bachelor's and Master's degree in Seoul and then entered a doctoral program in Molecular Cell Biology and Pathobiology at MUSC in 1989. Stanley Hoffman, Ph.D., a professor in MUSC's Department of Medicine, Division of Rheumatology and Immunology, ("Division") acted as Beon's thesis

4

advisor. She earned her Ph.D. in 1994. Beon was a post-doctoral fellow at MUSC from 1995 to 1998.

In February 1999, MUSC employed Beon as a Visiting Research Associate in its Department of Cell Biology and Anatomy. Beon, however, experienced difficulty working in this assignment. According to Beon, Hoffman became aware of the situation, personally approached her about the problem and discussed working in the Division. In May 1999, Beon was transferred from the Department of Cell Biology and Anatomy to the Division. After her transfer, Beon initially worked with the Director of the Division, Richard Silver, M.D., who had previously approved and requested Beon's transfer to the Division.

Beginning in 2000, Hoffman became Beon's research mentor and she began working in his laboratory in the Division. Beon worked in Hoffman's laboratory continuously until June 30, 2007. On July 1, 2007, Beon transferred to a temporary position as a Research Associate in MUSC's Department of Otolaryngology. On July 31, 2007, MUSC terminated Beon.

Beon's employment with MUSC was pursuant to a series of yearly contracts, known as University Faculty Appointment Contracts. Each faculty contract was for a period of twelve months, from July 1st through June 30th, and subject to renewal at the end of each twelve month period. In addition to other items, each faculty contract contained Beon's compensation for

5

the term of the faculty contract, which rose over the years from $25,000 to $42,000 per year.

As a Research Associate, MUSC required Beon to acquire sufficient grants to fund her research in the Division or, in the alternative, seek out other research scientist, such as Hoffman, who had available funding to wholly or partially support her position. In short, Beon's faculty contracts to work as a Research Associate included working on assigned projects in the Division and, additionally, securing sufficient grant funding to financially support her position at MUSC. In MUSC's Department of Medicine, including the Division, the salaries of scientific researchers are established each year based primarily, on the amount of grant funding available to support each researcher's desired salary. In other words, for those doing scientific research only at MUSC, their yearly salaries and their positions as a whole are directly proportionate to the amount of grant funding each researcher is able to secure for that particular year.

Beon held the position of non-tenure track Research Associate at MUSC from 1999 until July 2007. The Division, including Silver and Hoffman, never recommended Beon for promotion. Recommendations are to be determined based upon promotion criteria established by MUSC's Department of Medicine. Additionally, Beon could not be promoted unless Silver

recommended her. Silver and Hoffman, however, believed Beon's performance never justified a promotion recommendation.

As mentioned, Beon's faculty contracts, including her last faculty contract for the period of July 1, 2006, to June 30, 2007, were expressly for only twelve months of employment. Since Beon was continuously employed for more than three years by sequential faculty contracts, MUSC was required by the Faculty Handbook to give her notice of its decision not to renew her faculty contract at least one year prior to the expiration of her most recent faculty contract. As a result, Dr. Silver and Dr. Feussner wrote Beon a letter on May 8, 2006, which read:

> Unfortunately, the current financial environment makes it necessary for us to inform you that unless additional sources of support can be identified for your position, your faculty contract will not be renewed for next year. This notice serves as your required notice as per the MUSC Faculty Handbook, section 7.02.[1]

---

[1] Section 7.02 of the Faculty Handbook is entitled, "Non-reappointment, Termination, and Dismissal of Non-tenured Faculty Members" and reads in pertinent part:

> Unless otherwise stated by a written contract of appointment, all non-tenured faculty members are under contract for one (1) year from the date of their employment with the department.
>
> State legislation (S.C. Code of Laws as amended, section 8-17-380) provides that non-renewal of employment contracts at the end of the contract term is not grievable by the mechanism outlined in the Code. When a decision of non-renewal is reached, no reason for non-renewal need be given, but it is usually more professional and humane for the chair to discuss the reasons leading to the decision with the faculty member affected.

> We will assist you with your efforts to
> obtain alternative sources of support and hope
> that your efforts are successful.

At oral argument before the undersigned, Beon explained that her sixth count, a state law claim of breach of contract, is solely that this May 8, 2006, letter was a "contract to enter into a contract" which Beon contends MUSC breached when it did not enter into a faculty contract with her for the 2007-2008 year.

Following the aforementioned letter of May 2006, on March 20, 2007, Dr. Silver wrote to Beon and hand delivered a letter which read:

> In regards to our conversation yesterday, I want
> to reiterate that the Division funding situation
> does not allow me to offer you continued
> employment beyond June 30, 2007. It would be
> prudent to begin looking for other employment, and
> I would be glad to provide you a reference for
> such.
>
> I suggest that you discuss the matter of IDC on
> the DOD grant with Dr. Steve Lanier. I certainly
> think that the institution should accept an 8% IDC
> rate, since the grant is considered a new
> investigator grant. After you have spoken with Dr.

---

When a decision not to renew an appointment has first been reached, the faculty member involved will be informed of that decision by the department chair making the decision; the faculty member may be advised upon request of the reasons which contributed to that decision. ...

Written notice of the intention not to renew the appointment of a non-tenured faculty member shall be given ... .
    (3) At least one (1) year prior to the expiration of the most recent contract for faculty under a third (3rd) year or subsequent-year contract with the department.

8

> Lanier, I would be pleased to discuss the DOD
> grant matter with him if you desire. Due to these
> circumstances, you should not start working or
> spending on the project until your employment
> status after June 30 is determined.

Beon acknowledged under oath that this letter "clearly indicates they're not going to renew your contract at the end of June." Pl. dep. pgs 86-87). Similarly, when Dr. Silver delivered the letter to her, Beon deposed that he said, "Mikki, this letter, I'm sorry, but your contract will not be renewed despite the funding arrived." When asked, "Did Dr. Silver make it clear to you, though, at the time he delivered the letter to you that your contract was not going to be renewed at the end of June?", Beon answered, "he made that clear in person and to my face." Id. Boen did not file a Charge of Discrimination with SCHAC until March 12, 2008.

### EVENTS FOLLOWING NON-RENEWAL OF THE CONTRACT

Although Beon did secure a Department of Defense (DOD) grant in 2007, prior to the expiration of her 2006-2007 faculty contract, which provided partial funding for her position, MUSC contended that the DOD grant was not adequate to cover all of her salary, benefits and research costs. MUSC asserted that Beon needed to secure other, additional funding for her position. After her faculty contract expired on June 30, 2007, Beon worked as a Research Associate in MUSC's Department of Otolaryngology, as a temporary appointment, from July 1, 2007, until July 31,

9

2007, while she and others made further attempts to secure sufficient grant funding or other MUSC work.

In August 2007, Beon asked for a meeting with John R. Raymond, M.D., MUSC's Vice President for Academic Affairs and Provost. Raymond met with Beon prior to August 28, 2007, and, thereafter, sent Beon a letter dated August 28, 2007, recounting their meeting. Silver and Gary Gilkerson, M.D., the Vice Chairman of Research for the Department of Medicine, wrote Beon on September 26, 2007, regarding the DOD grant for which she was currently the designated principal investigator. Since Beon was no longer employed by MUSC, Silver and Gilkerson wanted to assign another principal investigator to the DOD grant so MUSC could retain the grant funds and perform the research. Beon refused to approve the request of Silver and Gilkerson because she wanted to remain the principle investigator on the DOD grant, even though she was no longer employed by MUSC. Still, Beon agrees that the grant funds did not belong to her but rather belonged to MUSC.

Subsequently, on October 24, 2007, Silver and Pal Gooz, M.D., a Research Assistant Professor in the Division, wrote the DOD directly and nominated Gooz as the new principal investigator for the DOD grant. In response, Beon wrote the DOD on November 8, 2007, and objected to Gooz being assigned as the new principal investigator.

Next, according to Beon, she met with John R. Feussner, M.D., Professor and Chair of MUSC's Department of Medicine in December 2007. Although, according to Beon, Feussner had previously told her it was unnecessary for him to meet with her, he, nevertheless, met with her to discuss the non-renewal of her faculty contract. In addition to meeting with Feussner, Beon met with Jerry Reves, M.D., the Dean of the College of Medicine, to discuss the non-renewal of her faculty contract.

Thereafter, by letter dated January 30, 2008, Beon requested a formal faculty grievance hearing. In response, Raymond, in a lengthy letter to Beon dated February 1, 2008, agreed to convene a Faculty Hearing Committee, even though Beon was not entitled to such a hearing according to MUSC's Faculty Handbook. The Committee met on February 15, 2008, and discussed Beon's complaints but decided not to go forward with a formal grievance hearing. Raymond, by letter to Beon dated February 26, 2008, accepted the Faculty Hearing Committee's recommendation. Nonetheless, Beon wrote a letter to the Faculty Hearing Committee dated March 5, 2008, requesting further review of her complaints. On March 13, 2008, Raymond sent Beon a letter notifying her that the Faculty Hearing Committee would not conduct further review of her complaints.

Beon also submitted her complaints about MUSC, Hoffman, and Silver to MUSC's Office of Gender Equity (OGE) on March 7, 2008.

On March 11, 2008, Beon met with Connie Best, Ph.D., the Director of OGE, and Daniel W. Smith, Ph.D., the Associate Director of OGE. By letter dated March 12, 2008, Best and Smith notified Beon that OGE declined to take further action regarding Beon's complaints. Beon submitted her Charge of discrimination to SCHAC on March 12, 2008.[2] On March 14, 2008, Beon sent an e-mail to OGE regarding its March 12, 2008, letter. In response Best and Smith sent another letter to Beon dated March 18, 2008, reiterating their decision and declining to review her complaints further.

On March 24, 2008, Beon sent a letter detailing her complaints to the MUSC Board of Trustees ("Board"). By letter to Beon dated April 1, 2008, the Board declined further review of her complaints.

Beon's sole claim of illegal retaliation is that following her complaint to the OGE on March 7, 2008, she was thereafter denied a formal grievance hearing by the Faculty Hearing Committee and the Board on March 12, 2008, and March 13, 2008. She does not, and cannot, contend that the Committee's decision on February 15, 2008, not to go forward with a formal grievance hearing was retaliatory, nor that Raymond's February 26, 2008, letter accepting the Faculty Hearing Committee's recommendation

---

[2] At oral argument Beon conceded that her Charge of Discrimination was filed on March 12, 2008.

not to have a formal grievance hearing was retaliatory, because these denials of a formal grievance hearing predate the alleged protected activity.

## DISCUSSION

A review of the record and relevant case law reveals that the defendant is entitled to judgment as a matter of law on all remaining claims.

Beon's first allegation is that her 12 month faculty contract was not renewed for the year 2007-2008 because of the MUSC's illegal gender based animus. This claim is not actionable because Beon did not bring her Charge of Discrimination within 300 days of the alleged discriminatory act as required by Title VII. "Title VII and the [ADEA] ... provide a maximum of 300 days from the occurrence of an alleged discriminatory event for a claimant to file a timely charge with the EEOC, if she first instituted proceedings with a state or local agency, 42 U.S.C. § 2000e-5(e)(1); 26 U.S.C. § 26(d)(2)." Evans v. Techs. Applications & Serv., Co., 80 F.3d 954, 962 (4th Cir. 1996).

Further, the U. S. Supreme Court has previously determined, in cases similar to this one, that the proper focus for determining when the discriminatory act occurred is the date the complainant becomes aware of the decision to terminate, or in the instant case, not to renew a faculty contract, rather than the date the contract ends or the employee is actually terminated.

Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)(focus must be on the time of the decision, not the point the decision impacts the plaintiff); Chardon v. Fernandez, 454 U.S. 6, 7-8 (1981)("reasonable notice cannot extend the period within which suit must be filed"); see also, Nat.l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)(distinct acts of discrimination include termination).

Beon argued that the letter from Feussner and Silver dated May 8, 2006, did not provide actual notice to her that her faculty contract would not be renewed but, to the contrary, only provided notice that there was a possibility it would not be renewed. Beon, therefore, contends that her 300-day time period to file a Charge of Discrimination did not begin to run as of May 8, 2006.

It appears that Beon's argument is misplaced. A fair reading of the May 2006 letter is that she is being informed, because of the current financial environment, that her faculty contract will not be renewed for the next year. While the letter mentions the lack of additional sources of funding to support her position, it is clear that procuring such support is a condition precedent to a renewal of the contract, which procurement was Beon's responsibility, not MUSC's responsibility.

Additionally, the fact that Beon was informed in the letter that the letter was the notice required by the MUSC Faculty

14

Handbook, section 7.02, is further proof that the letter was an unconditional notice of intent not to renew her contract. That section is clear that the notice is notice of non-renewal of her faculty contract, not notice of the mere possibility of non-renewal, as Beon would have it.

Nonetheless, Silver's subsequent letter to Beon dated March 20, 2007, specifically and unequivocally states the following: "In regards to our conversation yesterday, I want to reiterate that the Division funding situation does not allow me to offer you continued employment beyond June 30, 2007." Silver, in his letter, goes on to state that "[i]t would be prudent to begin looking for other employment, and I would be glad to provide you a reference for such."

Beon deposed that she agreed that this letter "clearly indicates they're not going to renew your contract at the end of June." Pl. dep. pgs 86-87). When Dr. Silver delivered the letter to her, Beon deposed that he said, "Mikki, this letter, I'm sorry, but your contract will not be renewed... . When asked, "Did Dr. Silver make it clear to you, though, at the time he delivered the letter to you that your contract was not going to be renewed at the end of June?" Beon answered, "he made that clear in person and to my face." Id.

Therefore, regardless of the language or meaning of the letter to Beon dated May 8, 2006, Silver's letter dated March 20,

15

2007, informed Beon that her faculty position would not be renewed and Beon understood the same. Still Beon did not file a claim with SHAC or the EEOC until almost a year later.

Based upon Chardon, Ricks, and Morgan, Beon's 300-day time period to file her Charge challenging MUSC's decision to not renew her faculty contract began at the latest on March 20, 2007. Beon, however, did not submit her Charge to the SCHAC or the EEOC until March 12, 2008, outside the statutory 300 day limit. Count 1 is not actionable as a result and defendant is entitled to judgment as a matter of law.

Beon's next allegation is that MUSC's last refusals to hold a full formal hearing on her grievance constituted illegal retaliation for her having complained to the OGE on March 7, 2008. This claim is simply nonsensical. MUSC refused consistently and repeatedly to hold a full formal hearing. The fact that she complained that MUSC would not renew her faculty contract because of sex based animus in the course of a string of denials of a formal grievance hearing does not make the continued denial of a formal grievance hearing discriminatory; this fact alone bars Beon from carrying her burden to prove that her protected activity caused the formal hearing denials which followed. See, e.g., Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001).

Specifically, Beon does not, and cannot, explain why the Committee's decision on February 15, 2008, declining to go forward with a formal grievance hearing was retaliatory, nor can she explain how Raymond's February 26, 2008, letter accepting the Faculty Hearing Committee's recommendation declining to have a formal grievance hearing was retaliatory; these denials of a formal grievance hearing predate the alleged protected activity and refute any claim of causation. The defendant is entitled to summary judgment.

The last claim is a state law breach of contract claim. Beon asserts that the letter from Feussner and Silver dated May 8, 2006, created a contract with MUSC to renew her faculty contract for 2007-2008 if she procured an unspecified amount of grant funding and that contract was breached when Beon did procure a DOD grant which partially supported her continued employment.

This claim fails for various reasons, but is most easily dismissed because the May 6, 2008, letter could not form a valid contract as there was no meeting of the minds between the parties with regard to all essential terms of the agreement. See, e.g., Player v. Chandler, 299 S.C. 101, 104-05, 382 S.E.2d 891, 893 (1989). MUSC asserts that it did not renew the contract because Beon did not obtain sufficient funding while Beon contends that she was only obligated to obtain some funding. It cannot be

disputed that the amount of funding needed was an essential term of the purported contract. However, there simply was no meeting of the minds on an essential term of the agreement; no enforceable contract was formed. MUSC is entitled to summary judgment on the final cause of action.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment on the remaining causes of action be granted and this matter ended.

Respectfully Submitted,

*Robert S. Carr*
Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

May 10, 2010