IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Mee Keong Beon, | ) | C. A. No. 2:09-0004-CWH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Medical University of South Carolina, | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, Mee Keong Beon (the "plaintiff"), a former employee of the Medical University of South Carolina ("MUSC" or the "defendant"), filed this action alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), and breach of contract under state law, stemming from MUSC's decision not to renew her contract as a research associate. On February 15, 2010, the defendant moved for summary judgment. The plaintiff filed a response in opposition to that motion, and on April 7, 2010, Magistrate Judge Robert S. Carr ("Magistrate Judge Carr") heard oral arguments on the motion.[1] On May 10, 2010, Magistrate Judge Carr issued a report analyzing the issues and recommending that the Court grant the defendant's motion for summary judgment. On May 26, 2010, the plaintiff filed her objections to the report and recommendation, and on June 10, 2010, the defendant filed its response.

---

[1] All pretrial proceedings in this matter were referred to the magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.).



Page 1 of 9

This matter is now before the Court for disposition. The Court is charged with making a de novo determination of any portions of the magistrate judge's recommendation to which a specific objection is made. 28 U.S.C. § 636(b). The Court evaluates the evidence without granting any deference to the magistrate judge's findings and conclusions. Mathews v. Weber, 423 U.S. 261, 270-71 (1976); Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993). The final decision is made by the Court based upon the actual record, not merely the magistrate judge's reported findings. Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985). The Court may accept, reject, or modify, in whole or in part, the report and recommendation, or recommit the matter with instructions. 28 U.S.C. §636(b)(1). After a full review of the record and pertinent case law, the Court adopts the report and recommendation and grants summary judgment to the defendant.

## I. Background

The plaintiff is an Asian female of Korean national origin who receive her bachelor's and master's degrees in Seoul, South Korea. In 1989, the plaintiff was admitted to MUSC's doctoral program in Molecular Cell Biology and Pathobiology. Stanley Hoffman, M.D. ("Dr. Hoffman"), a professor in MUSC's Department of Medicine, Division of Rheumatology and Immunology (the "Division"), acted as the plaintiff's thesis advisor. She was awarded a Ph.D. from MUSC in 1994. From 1995 to 1998, she worked as a post-doctoral fellow at MUSC. In February 1999, the plaintiff was employed by MUSC as a visiting research associate in the Department of Cell Biology and Anatomy before transferring to Dr. Hoffman's Division, where she began working with the Division's Chief, Richard Silver, M.D. ("Dr. Silver"). Beginning in 2000, Dr. Hoffman became the plaintiff's research mentor and she began working in his laboratory in the Division.



The plaintiff's duties as a research associate included working on assigned projects in the Division as well as securing sufficient funding to financially support her position at MUSC. Dr. Silver acknowledged in his deposition that research associates are responsible for generating their own salaries through writing grants, either as a principal investigator or as a co-investigator with other faculty members at MUSC. (Silver dep. at 18, ll. 16-23 (Docket Entry # 48-1 at 7)).

The plaintiff's non-tenure track employment with MUSC was pursuant to a series of one-year contracts, known as University Faculty Appointment Contracts. Each faculty contract was for a 12-month term, beginning on July 1 of one year and ending on June 30 of the next year, and subject to renewal at the end of each twelve month period. Because the plaintiff was continuously employed for more than three years by sequential faculty contracts, MUSC was required, pursuant to the terms of its Faculty Handbook, to give her notice of its decision not to renew her faculty contract at least one year prior to the expiration of her most recent faculty contract. Specifically, Section 7.02 of the Faculty Handbook, titled "Non-reappointment, Termination, and Dismissal of Non-Tenured Faculty Members," provides in pertinent part:

> Unless otherwise stated by a written contract of appointment, all non-tenured faculty members are under contract for one (1) year from the date of their employment with the department. . . .
>
> State legislation (S.C. Code of Laws as amended, section 8-17-380) provides that non-renewal of employment contracts at the end of the contract term is not grievable by the mechanism outlined in the Code. When a decision of non-renewal of contract is reached, no reason for non-renewal need be given, but it is usually more professional and humane for the chair to discuss the reasons leading to the decision with the faculty member affected.
>
> . . .
>
> Written notice of the intention not to renew the appointment of a non-tenured faculty member shall be given . . .



. . .

    (3) At least one (1) year prior to the expiration of the most recent contract for faculty under a third (3rd) year or subsequent-year contract with the department.

(Docket Entry # 60-9 at 4-5).

On May 8, 2006, Dr. Silver and John R. Feussner, M.D., M.P.H. ("Dr. Feussner"), who was Chairman of the Department of Medicine, wrote the plaintiff a letter which stated:

> Unfortunately, the current financial environment makes it necessary for us to inform you that unless additional sources of support can be identified for your position, your faculty contract will not be renewed for next year. This notice serves as your required notice as per the MUSC Faculty Handbook, section 7.02.
>
> We will assist you with your efforts to obtain alternative sources of support and hope that your efforts are successful.

(Docket Entry # 60-5 at 2).

In January 2007, the plaintiff secured a Department of Defense ("DOD") research grant with an effective date of March 15, 2007. (Docket Entry # 60-7 at 18; see generally, Docket Entry # 60-6). Dr. Silver testified at his deposition that the DOD grant would have covered only a portion of the plaintiff's salary. (Silver dep. at 20, ll. 11-12 (Docket Entry # 48-1 at 7)). He further testified that his Division did not have the resources to pay the plaintiff the rest of her salary. (Silver dep. at 21, ll. 7-8 (Docket Entry # 48-1 at 8)).

On March 20, 2007, Dr. Silver hand-delivered a letter to the plaintiff which stated:

> In regards to our conversation yesterday, I want to reiterate that the Division funding situation does not allow me to offer you continued employment beyond June 30, 2007. It would be prudent to begin looking for other employment, and I would be glad to provide you a reference for such.

(Docket Entry # 60-5 at 3).

The plaintiff worked in Dr. Hoffman's laboratory until June 30, 2007. On July 1, 2007, the plaintiff was transferred from the Department of Medicine to a temporary position as a research associate in MUSC's Department of Otolaryngology. The letter offering the plaintiff that transfer stated that the position would end on July 31, 2007. (Docket Entry # 60-5 at 4). Accordingly, on July 31, 2007, MUSC released the plaintiff from employment. On March 12, 2008, the plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission. The plaintiff's right to sue letter was dated August 25, 2008, and the plaintiff timely filed her complaint in state court on November 24, 2008.

## II. Standard of Review

When a party has moved for summary judgment, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). An issue of such material fact is "genuine" if the evidence so offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. The Plaintiff's Objections

### A. The Date the Charge of Discrimination was Filed

First, the plaintiff objects to the magistrate judge's conclusion that the plaintiff filed her charge of discrimination with the South Carolina Human Affairs Commission on March 12, 2008. (Objections (Docket Entry # 71) at p. 3). The plaintiff contends that she filed her charge of discrimination in January of 2008. (Id.). This objection is wholly without merit, because, as the magistrate judge noted in his report, the plaintiff conceded at oral argument that her charge of discrimination was filed on March 12, 2008. (Report (Docket Entry # 70) at 12, n.2).

## B. The Timeliness of the Title VII Claim

Second, the plaintiff objects to the magistrate judge's conclusion that her Title VII claim for gender discrimination was not actionable because the plaintiff failed to file her charge of discrimination within 300 days of the alleged discriminatory act. (Obj. (Docket Entry # 71) at 3). Title VII provides a maximum of 300 days from the occurrence of an alleged discriminatory event for a claimant to file a timely charge with the EEOC, if she first instituted proceedings with a state agency, as was the case here. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing 42 U.S.C. § 2000e-5(e)(1)). The magistrate judge correctly found that the plaintiff was on notice as of May 8, 2006 that her faculty position would end on June 30, 2007. (Report (Docket Entry # 70) at 14). Moreover, as the magistrate judge noted, the May 8, 2006 letter specifically stated that it "serves as your required notice as per the MUSC Faculty Handbook, section 7.02." (Id.; see also Docket Entry # 50-3). Regardless of the May 6, 2006 letter, however, the magistrate judge further found that Dr. Silver's March 20, 2007 letter unequivocally informed the plaintiff that her employment would end on June 30, 2007. (Report (Docket Entry # 70) at 15). The plaintiff testified in her deposition that at the time Dr. Silver presented the letter to her, he said, "I'm sorry, but your contract will not be renewed despite the

Page 6 of 9



funding [that] arrived." (Pl. dep. at 87, ll.17-19 (Docket Entry # 65-1 at 4)). She was asked at her deposition, "Did Dr. Silver make it clear to you, though, at the time he delivered the letter to you that your contract was not going to be renewed at the end of June?" The plaintiff answered: "I believe he made that clear in person to my face." (Pl. dep. at 88, ll. 7-12 (Docket Entry # 65-1 at 4)).

The magistrate judge correctly found that, even using the March 20, 2007 date, the plaintiff failed to file her charge of discrimination within 300 days. Indeed, she did not file her claim until March 12, 2008, almost one year later. The plaintiff's charge of discrimination was not timely filed.

### C. The Date of the Alleged Discriminatory Act

Next, the plaintiff argues that neither letter should be used to start the running of the 300 day time period because "[a]t the time of either of the letters the Plaintiff had not actually been harmed and therefore the charge of discrimination would have been untimely." (Obj. (Docket Entry # 71) at 4). The plaintiff's argument is contrary to settled case law. As the Supreme Court clearly held in Delaware State College v. Ricks, 449 U.S. 250, 259 (1980), the filing period for a charge of discrimination runs from the time of the alleged discriminatory employment decision, even though the effect of that decision would occur later. The Court in Ricks noted: "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." Id. (internal quotation marks, emphasis, and citation omitted). Accord Chardon v. Fernandez, 454 U.S. 6, 7-8 (1981) (per curiam) (a plaintiff's cause of action for wrongful termination under 42 U.S.C. § 1983 accrued at the moment that she learned of her employer's decision to terminate her, even though the actual termination occurred later); Nat'l



R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (discrete acts of discrimination include termination). The plaintiff's objection is without merit.

### D. The Notice of Termination was Conditional

Again relying on the May 6, 2006 and March 20, 2007 letters, the plaintiff argues that "[b]oth letters state that the Plaintiff's termination is conditional on receiving additional funding," so "if the Plaintiff could obtain further funding she would have her contract renewed." (Docket Entry # 71 at 4). The plaintiff contends that she secured "sufficient" funding by obtaining the DOD grant. (Id.). In urging such arguments, however, the plaintiff ignores the reference in the May 8, 2006 letter to section 7.02 of the Faculty Handbook as well as the unequivocal statement that "your faculty position will end effective June 30, 2007." (Docket Entry # 50-3 at 2). Moreover, Dr. Silver's March 20, 2007 letter, which was written after the plaintiff had received the DOD grant in January 2007, stated unequivocally: "In regards to our conversation yesterday, I want to reiterate that the Division funding situation does not allow me to offer you continued employment beyond June 30, 2007." (Docket Entry #53-7 at 2). The text of the March 20, 2007 letter, as well as the plaintiff's testimony, do not support the plaintiff's argument before this Court that "her position would end conditionally 'unless [she] secure[d] research funding.'" (Obj. (Docket Entry # 71) at 4). This objection is without merit.

### E. The May 6, 2006 Letter was a Promise

Lastly, the plaintiff objects to the magistrate judge's recommendation that MUSC be granted summary judgment on the plaintiff's state law cause of action for breach of contract. The plaintiff appears to argue that the May 6, 2006 letter "set forth a promise to the Plaintiff that if she received additional funding she would have a position." (Obj. (Docket Entry # 71) at 5). As



the magistrate judge correctly found, there was no meeting of the minds between the parties with respect to all essential terms of the agreement, and thus no enforceable contract was formed. (Report (Docket Entry # 70) at 17-18).

The Court accepts and adopts the magistrate judge's report and recommendations (Docket Entry # 70), and grants the defendant's motion for summary judgment (Docket Entry # 55).

**AND IT IS SO ORDERED.**

C. WESTON HOUCK
UNITED STATES DISTRICT JUDGE

July 21, 2010
Charleston, South Carolina